JONATHAN D. CONDIT, Respondent, *v.* JANE H. COWDREY, Appellant.

In an action by a broker to recover commissions for the sale of certain lands, to prove that he had effected a sale, plaintiff gave in evidence two instruments; one of them executed by the alleged vendor and purchaser was entitled "conditions of hypothecation;" it stated in substance that deeds of the premises and obligations made by the purchaser "for the purchase of said lands" had been deposited "for safe keeping and deliv-

ery;" that if the obligations were paid at maturity then that the deeds were to be delivered "or in the case of any defalcation in the payment;" that the deeds and papers were to be delivered to the vendor "and all moneys paid shall be forfeited in liquidation of damages sustained by virtue of the non-payment of any of said obligations." The other instrument signed by the vendor was to the effect that she had received a sum of money specified, and the obligations, in payment for the land described in the deeds, that the deeds and obligations were "deposited as an *escrow,*" and that upon payment of the obligations the deeds were to be delivered. Defendant offered evidence to the effect that the contract between the parties to the instrument was in substance an option, the purchaser having the liberty to refuse to purchase upon forfeiting the money paid. This testimony was rejected on the ground that the writings were conclusive. *Held,* error, as said writings were merely collateral matter to which plaintiff was neither a party, nor a privy; also that the papers themselves did not purport to contain the entire contract, and so, either party was entitled to.prove by parol evidence what the contract really was.

*Condit* v. *Cowdrey* (25 J. & S. 66), reversed.

(Argued October 10, 1890; decided December 2, 1890.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made May 6, 1889, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court, and affirmed an order denying a motion for a new trial.

This action was brought to recover commissions claimed to have been .earned as broker, in selling certain lands for the defendant.

The facts, so far as material, are stated in the opinion.

*William W. MacFarland* for appellant. The trial judge was not justified in refusing the defendant's request to go to the jury upon the ground that she first asked for a nonsuit. (*Kohler* v. *Adler,* 78 N. Y. 289.) No sale of the property was effected. (*Sibbald* v. *B. I. Co.,* 83 N. Y. 378 ; *Fraser* v. *Wyckoff,* 63 id. 445 ; 1 Pars. on Cont. [7th ed.] 109 ; *McMasters* v. *Ins. Co.,* 55 N. Y. 222, 234.) If the defendant was not entitled to a dismissal of the complaint, it was error to refuse her request to go to the jury. (*F. N. Bank* v. *Dana,* 79 N. Y. 108.)

*Henry G. Atwater* for respondent.   There was no question for the jury as to the terms of plaintiff's employment. (*Corse* v. *Peck*, 102 N. Y. 515 ; *Eighmie* v. *Taylor*, 98 id. 288 ; *Perzell* v. *Shook*, 21 J. & S. 501 ; *Engelhorn* v. *Reitlinger*, 55 id. 485 ; *Fondavila* v. *Jourgensen*, 20 id. 403.) The plaintiff had performed the conditions necessary to entitle a broker to his commissions. (*Duclos* v. *Cunningham*, 102 N. Y. 678 ; *Lloyd* v. *Matthews*, 51 id. 124; *Mooney* v. *Elder*, 56 id. 240 ; *Sibbald* v. *B. I. Co.*, 83 id. 378, 382, 384 ; *Hart* v. *Hoffman*, 44 How. Pr. 168 ; *Barnard* v. *Monnat*, 1 Abb. Ct. App. Dec. 108 ; *Knapp* v. *Wallace*, 41 N. Y. 479 ; *Glentworth* v. *Luther*, 21 Barb. 145 ; *Holley* v. *Gosling*, 3 E. D. Smith, 262.)

FINCH, J.   The judgment entered by direction of the court awarding his commissions to the plaintiff stands upon the legal construction and effect of the two papers ; one a receipt, and the other an agreement for a deposit in escrow, which the court held merged all prior negotiations and established a contract for the sale and purchase of the Kentucky lands.   If that construction was correct the judgment awarded was an inevitable result ; but the defendant claims that the writings show merely an option or privilege for which the alleged vendees paid the sum of two thousand dollars, and which left them at liberty to purchase, or to refuse to purchase, at their own choice and pleasure, and so the minds of the parties never met, and the broker's effort to effect a sale failed of success. The agreement for an escrow was entitled " Conditions of Hypothecation," and was as follows : " There is hereby placed with the Second National Bank of New York city for safe keeping and delivery, as per these presents, eight deeds, transferring the title to 435,000 acres of land, situated in the state of Kentucky, from J. H. Cowdrey, executrix, to W. A. Millikin and Fred. Wolffe, likewise three obligations for the payment of money, one for $13,834 payable July 27th, 1888, one for $13,833 payable August 27th, 1888, and one for $13,833 payable October 27th, 1888, which three obligations are made

for the purchase of said lands. Now if the above obligations are paid at maturity, as provided by said obligations, then the enclosed deeds are to be delivered to said Millikin or Wolffe, but in case of any defalcation in the payment, the deed and papers are to be delivered to Mrs. J. H. Cowdrey, and all moneys paid shall be forfeited in liquidation of damages sustained by virtue of the non-payment of any of said obligations." The receipt given was signed by the vendor, dated April 26, 1888, and was in these words: "Received of Fred. Wolffe and W. A. Millikin (2,000) two thousand dollars and three acceptances for $13,833⅓ each, drawn by W. A. Millikin on Fred. Wolffe, to the order of Mrs. Jane H. Cowdrey, and accepted by said Wolffe, and due respectively at 90 days, four months and six months from date, which cash and acceptances are in payment of several tracts of land lying in eastern Kentucky, containing 435,000 acres, and for which the said Mrs. Cowdrey has this day executed eight several deeds, and said deeds, with said acceptances, are deposited in escrow with the Second National Bank of New York, and upon the payment of said acceptances said deeds are to be delivered by said bank to said Wolffe and Millikin. The said parties are to have the privilege of paying off said acceptances at any time without waiting for their maturity."

These two papers, executed at the same time and relating to the same subject-matter, should, of course, be read together, and may be construed in the light of such surrounding facts and circumstances as were proved without objection, and remained without the least contradiction. Both parties refer to them as tending to explain the written instruments; but the defendant goes further, and, insisting that there was an unexpressed condition upon which the writings were delivered, claims the right to prove that fact, and so establish what was the whole and complete contract.

Taken by themselves, I think the writings, on their face, tend to establish the existence of a contract of sale. The receipt specifies that the cash and acceptances "are in payment for" the land, and the agreement for an escrow, after

describing the acceptances, specifically declares "which three obligations are made for the purchase of said lands." And the further provision that in case of any "defalcation" in the payment "the deeds and papers are to be delivered to Mrs. J. H. Cowdrey, and all moneys paid shall be forfeited in liquidation of damages sustained by virtue of the non-payment of any of said obligations," is apparently inconsistent with the theory of a mere option and the absence of an agreement of sale. An omission to pay when the contract imposed no obligation to pay, would not naturally be termed a "defalcation," and the money paid is not described as the price of an option, but as "forfeited in liquidation of damages." There could be no damages to be liquidated if there was no contract broken, and the money would be simply paid and not forfeited.

But while the writings on their face may fairly be said to import a contract of sale, they leave us in doubt whether it was absolute or conditional, and indicate the existence of some agreement or understanding lying back of their execution and not fully expressed, and a contract of sale by possibility binding upon the vendee only at his pleasure.

The fact that the acceptances were put in escrow, and not at once delivered to the vendor, as, with the money, constituting the purchase-price, indicates that some condition was attached to their delivery. If the contract of sale was absolute as to the vendees, and they were bound in any event to take the property and pay the price, the acceptances, like the cash, should have gone to the vendor. She would have been and ought to have been at liberty to enforce them and not be compelled to place them in escrow. It is true that plausible reasons may be given for that arrangement. The bank, acting as depositary of the deeds, and bound only to deliver them on payment of the acceptances, could more conveniently and certainly know whether the condition had been performed if it held the paper to be paid, and the makers of that paper may have desired that no third person should acquire by a purchase before maturity any new or paramount rights; but these reasons are not sufficient to exclude the inference that the

acceptances were put in escrow because there was some contract emergency in which no effectual delivery was to occur. The escrow itself is entitled " conditions of hypothecation," and shows that both the deeds and the acceptances were to be delivered, not absolutely, but upon conditions.

There is claimed to be on the face of the papers a still more significant indication of the ultimate intent and real understanding of the parties. The escrow fixes the money paid by the vendees as the liquidated damages for the non-performance by them : that is, upon the maturity of the acceptances, the vendees may decline to take the land, refuse to pay their paper, and the sole remedy of the vendor is to collect or hold the agreed sum as liquidated damages. If this part of the agreement of escrow is entitled to receive that construction, and the two thousand dollars paid was to be retained by the vendor in satisfaction of and as full compensation for the vendees' non-performance, and was to be in lieu of and the equivalent for full performance by them, it will follow that the vendor could recover no other damages and enforce no other remedy. (Leake's Digest, 1087; *Richards* v. *Edick*, 17 Barb. 268; *Shiell* v. *M'Nitt*, 9 Paige, 102.) Upon that construction it is apparent that the contract of sale was in effect an option; for, whether the vendees bought a privilege to purchase for two thousand dollars, or agreed to purchase, with liberty to retreat upon paying two thousand dollars in lieu of performance, are propositions which differ in form, but not at all in their substantial results. In either case the sale is conditional; in either case it may occur or fail to happen; in either case the vendees are not bound to take the deed and pay the price.

But I am not sure of the construction suggested. Great doubts have attended the inquiry when and in what cases liquidated damages in discharge of full performance have been stipulated, and I do not rest my conclusions upon what might prove on examination an inadmissible construction, since the necessity for any such inquiry is obviated by the proof which the alleged vendor gave, that exactly that and nothing else was the real contract actually made between the parties, and

which the receipt and agreement of escrow were intended to carry out.

The parol evidence thus given was rejected by the court from final consideration on the ground that the writings were conclusive. That ruling was certainly erroneous. The plaintiff sued on a wrttten agreement for commissions. Relatively to that agreement the contract between Millikin and the defendant was a collateral matter, and one to which the plaintiff was neither a party nor a privy, and the papers themselves do not purport to contain the entire contract. In such a case, the writing is not conclusive, but either party is at liberty to prove by parol what the contract really was. (*McMaster* v. *Ins. Co. of N. A.*, 55 N. Y. 222; *Chapin* v. *Dobson*, 78 id. 74.) Now Mr. Dickson swears to the existence of a parol condition, which was unexpressed in the writings, and left the vendees at liberty to refuse to buy at the penalty of forfeiting the money paid. He says "they were not willing to pay for the land until they had searched the title, and to give them that opportunity the cash purchase was deferred as specified in the notes upon the express agreement, that the deeds and the notes should be placed in escrow till such time as they might be able to be satisfied as to the title, and if the title was satisfactory they would pay the paper and take the deeds. Those were the terms of the transaction." · If this evidence is true, what appears upon the face of the papers to have been an agreement of sale, is in reality a privilege to purchase at a fixed price, and to refuse to purchase upon the forfeiture of a definite sum, or what seemed to be an agreement of sale is in truth a mere option to purchase. If this evidence is true, the alleged vendees never bound themselves to take the land, but preserved their freedom to refuse, and the acceptances in Mrs. Cowdrey's hands were so much waste paper, and incapable of being enforced. Her sole right was to retain the money paid, and the alleged vendees were never bound to take title or pay the purchase-money. In other words there was no absolute contract of sale, but merely an option..

This evidence was contradicted and so there arose a question

of fact for the jury which should have been submitted to them under proper instructions. But the court excluded the evidence from consideration, decided the case upon the writings alone, and refused defendant's request to go to the jury.

For this error the judgment should be reversed and a new trial granted with costs to abide the event.

All concur, except EARL J., not voting.

Judgment reversed.