■ THOMAS GENTILE et al., Respondents, v SANG Y. KIM et al., Appellants. — Appeal from a judgment of the Supreme Court in favor of plaintiffs, entered August 4, 1983 in Albany County, upon a decision of the court at Trial Term (Pennock, J.), without a jury. ¶ On April 19, 1980, plaintiffs agreed to purchase 20 acres of land located in the Town of Glen, Montgomery County, from defendants. After signing the contract, which set May 15, 1980 as the closing date, and presenting a down payment of $1,150 to defendants' real estate broker, plaintiffs hired an attorney to represent them in this matter. The attorney ordered a survey and title abstract, which showed that defendants had acquired the property from Glen Associates. Under the joint venture agreement of Glen Associates,[*] no sale of real property in the association name

---

* Although Glen Associates was denominated a joint venture, a certificate of partners for Glen Associates appears in the record, and, in conjunction with our review of

could occur unless holders of 70% of the capital assets of the joint venture consented. There was no evidence that such consent had been given with regard to the sale of the subject property from Glen Associates to defendants. Plaintiffs' attorney considered this a defect in title and in late July, probably July 22, 1980, informed defendants, who were then not represented by counsel, that plaintiffs would not close with this title defect outstanding. ¶ Several conversations between plaintiffs' attorney and defendants occurred between this time and August 22, 1980, to when the closing date had been extended, but it was apparent that defendants did not undertake any action, not even to hire an attorney, to resolve this problem. On August 22, 1980, neither defendants nor plaintiffs appeared to close title and, by letter dated August 25, 1980, defendants were informed by plaintiffs' attorney that plaintiffs considered the contract void and desired their down payment returned, plus expenses occasioned by the contract. Defendants thereafter hired counsel and correspondence between the attorneys failed to resolve this dispute. Plaintiffs thereafter commenced this breach of contract action to recover their down payment and expenses. After a nonjury trial, Trial Term rendered a verdict for plaintiffs in the amount of $2,116, plus interest and costs. This appeal by defendants followed. ¶ We agree with Trial Term's assessment that, under the circumstances of this case, defendants' title to the subject property was not marketable. Usually, "to place a vendor of realty under a contract of sale in default for a claimed failure to provide clear title, the purchaser normally must first tender performance himself and demand good title" (*Willard v Mercer,* 83 AD2d 656, 657, affd 58 NY2d 840), and "[t]ender of performance by a purchaser is excused only if the title defect is not curable" (*id.*). It is undisputed that plaintiffs failed to tender performance even though they concede that the title was curable. Nonetheless, we are of the view that this failure by plaintiffs should not preclude them from succeeding in their action. Defendants were provided notice of the defect about one month prior to the extended closing date of August 22, 1980, yet did nothing to resolve this matter, not even hire an attorney, until after this closing date when they were informed that plaintiffs considered the contract void. Thus, defendants were provided a reasonable opportunity to cure the defect, which they squandered. A tender by plaintiffs on August 22, 1980 would have been meaningless and we will not require plaintiffs to perform meaningless acts (*Iannelli Bros. v Muscarella,* 30 AD2d 698, affd 24 NY2d 779; see *Rhodes v Astro-Pac, Inc.,* 51 AD2d 656, affd 41 NY2d 919). We have examined defendants' other arguments and find them without merit. Accordingly, defendants' breach of the contract was established and plaintiffs are entitled to damages as found by Trial Term. ¶ Judgment affirmed, without costs. Main, J. P., Mikoll, Yesawich, Jr., Levine and Harvey, JJ., concur.

the joint venture agreement, it appears that this business entity was in reality a partnership (see 16 NY Jur 2d, Business Relationships, § 1578, pp 254-255).