■ L.I.C. Commercial Corp., Respondent, v Richard Zirinsky, Appellant, et al., Defendant.—In an action for specific performance of a contract to convey real property, the defendant Richard Zirinsky appeals from a judgment of the Supreme Court, Queens County (Hyman, J.), dated September 3, 1987, which, *inter alia,* directed the defendant Richard Zirinsky to specifically perform the contract dated March 12, 1984, after a nonjury trial.

Ordered that the judgment is reversed, on the law, without costs or disbursements; and it is further,

Ordered that the plaintiff have judgment against the defendants (1) in the principal sum of $135,000 together with accrued interest from March 12, 1984, and (2) in the principal sum of $50,000 together with accrued interest from September 12, 1984; and it is further,

Ordered that the matter is remitted to the Supreme Court, Queens County, for entry of an appropriate judgment, after settlement on notice.

On March 12, 1984, the defendant Richard Zirinsky agreed to convey certain property located in Long Island City to the plaintiff, L.I.C. Commercial Corp. (hereinafter LIC). LIC made a down payment of $135,000, to be held in escrow in an interest-bearing account. The remainder of the purchase price was to be paid at the time of closing.

Pursuant to paragraph 3 of this contract, all money to be paid by LIC, as purchaser, over the sum of $1,000 was to be paid in the form of a "good certified check of PURCHASER or official check of any bank * * * payable to the order of SELLER, or to the order of PURCHASER and duly endorsed by PURCHASER (if an individual) to the order of SELLER".

Pursuant to paragraph 7 of the contract, the closing was scheduled for June 12, 1984. However, in paragraph 8 of a rider annexed to the contract, LIC was granted the right to

adjourn the closing for an additional three months, that is, until September 12, 1984, if financing approval from the New York State Industrial Development Agency (hereinafter IDA) were not obtained by June 12, 1984. A second rider to the contract provided that LIC could take advantage of yet another 60-day extension beyond the three-month extension mentioned above, on condition that it pay the sum of $50,000 toward the purchase price, and "with time of the essence as against purchaser". Reading these provisions together, we find that the parties agreed to close no later than on or about November 12, 1984, time being of the essence as to that date.

By letter dated July 30, 1984, after the June 12, 1984 closing date had passed, the defendant Richard Zirinsky advised LIC that it was in breach of paragraph 8 of the parties' contract. Mr. Zirinsky's position was, and now is, that LIC was required to seek IDA financing, and that its failure to do so constituted a breach of contract. Mr. Zirinsky later arranged to meet with representatives of the plaintiff on September 12, 1984, in order to discuss their respective contentions.

On September 12, 1984, LIC's representatives met with Mr. Zirinsky and tendered the sum of $50,000 to be held in escrow in an interest-bearing account in order to take advantage of the additional 60-day adjournment provided in the second rider to the contract. On appeal, the defendant Zirinsky argues that this $50,000 was accepted on the understanding that it would not constitute a waiver of his argument that LIC was in breach of contract.

The parties agreed to meet on November 20, 1984, in order to provide LIC with an opportunity to tender performance of its obligations. Mr. Zirinsky's attorney had notified LIC in advance that its tender would be rejected.

On November 20, 1984, representatives of LIC appeared and tendered certain checks which were payable to the order of "N. Richard Kalikow". Mr. Kalikow is not a party to the March 12, 1984 contract and did not testify at the time of the trial. Zirinsky refused to convey a deed to the premises.

This action for specific performance subsequently went to trial. The court, after a nonjury trial, directed specific performance of the contract. This appeal followed.

The first argument raised by the appellant is that since LIC never applied for IDA financing, it was in breach of contract. While it is true that LIC was directed in the parties' agreement to make such an application (para 8 of the first rider provides, *inter alia*, that "[p]urchaser shall proceed promptly

to make application to such agency"), we do not believe that the LIC's failure to comply with that directive constitutes a breach of its contract. The parties' agreement does not contain a provision which allows Mr. Zirinsky to cancel the contract in the event that IDA financing approval is not obtained *(see, Coneys v Game,* 141 AD2d 795; *cf., Grossman v Perlman,* 132 AD2d 522, 523, *lv denied* 70 NY2d 616, *rearg denied* 71 NY2d 890; *Levine v Trattner,* 130 AD2d 462; *Castaldo v Dalmazio,* 129 AD2d 548, *lv denied* 70 NY2d 604). Further, the contract states that if IDA financing is not obtained *and* LIC is unable to close, then Mr. Zirinsky would be entitled to retain LIC's down payment. Under these circumstances, we conclude that LIC had the right to forego any effort to obtain IDA financing and to arrange for alternative financing, provided, of course, that it was able to tender performance in compliance with paragraph 3 of the contract. We also reject the appellant's argument that LIC waived its right to adjourn the closing beyond June 12, 1984, as a result of its failure to notify the appellant, prior to June 12, that it was going to exercise that right *(see, Perrone v Pascal,* 111 AD2d 377).

The appellant also argues that the plaintiff failed to prove that, on November 20, 1984, it was ready, willing and able to perform its part of the bargain. This contention has merit and we conclude that, for this reason, specific performance was not warranted.

First, we note that the tender of checks made payable to a stranger to the contract did not conform to the provisions of paragraph 3 of the parties' contract. Had the appellant not already repudiated the contract, such a defective tender would have constituted a breach of contract on the part of LIC *(see, Colonial Diversified v Assured Holding Corp.,* 71 AD2d 1011 [defendant seller entitled to retain down payment where plaintiff purchaser tendered Small Business Administration check drawn on United States Treasury which, however, was not certified in accordance with contract]).

However, the plaintiff LIC, in light of Zirinsky's previous repudiation of the contract, was not obligated to tender performance, since it was a foregone conclusion that any such tender would be rejected. Nevertheless, the plaintiff LIC remained obligated to prove at trial that it was ready, willing and able to perform its obligations under the contract *(see, Huntington Min. Holdings v Cottontail Plaza,* 96 AD2d 526, *mot for stay granted* 60 NY2d 651, *affd* 60 NY2d 997; *see also, Wilson v City of Long Beach,* 133 AD2d 684, 685; *Zev v Merman,* 134 AD2d 555, 557). There is no proof in the present

record that plaintiff LIC was able, as of November 20, 1984, or at any other time, to make payment of the moneys due under the contract in the form called for in paragraph 3 thereof.

At most, the evidence adduced at trial indicates that on November 20, 1984, certain unnamed individuals, who had accompanied the plaintiff's representative to the "closing", displayed two checks made payable to N. Richard Kalikow. Even assuming that one of these individuals was Mr. Kalikow, there is no competent evidence, in the absence of any testimony from Mr. Kalikow, from which it could be inferred that he was prepared to endorse the check over to Mr. Zirinsky, had Mr. Zirinsky been prepared to convey title. Nor was there any evidence upon which to base a finding that Mr. Kalikow, as of November 20, 1984, had any legal obligation to loan these funds to the plaintiff, or that he intended to make a gift of them. This is a case where "the prospective purchaser was not personally able to purchase the property, but would have been relying on the financial assistance of certain third parties" *(Blackmore v Wigne Land Corp.,* 97 AD2d 889). Since there is no evidence that Mr. Kalikow was legally bound to lend, or to give to the plaintiff the funds represented by the two checks made payable to him, the plaintiff failed to prove that it was able to perform its obligations under the contract *(see, Blackmore v Wigne Land Corp., supra).*

Although we conclude, for the reasons stated above, that the plaintiff LIC failed to prove its right to specific performance, this does not leave the plaintiff without a remedy. The appellant's repudiation of the contract of sale in July 1984 constituted an anticipatory breach which, as we noted, relieved the plaintiff LIC of any obligation to tender performance in order to place the appellant in breach of contract *(see, Gentile v Kim,* 101 AD2d 939; *Iannelli Bros. v Muscarella,* 30 AD2d 698, *affd* 24 NY2d 779; *see also,* 62 NY Jur, Vendor and Purchaser, § 88, at 339). "Where the vendor breaches an executory contract for the sale of land, the vendee, if not himself in default, may elect to rescind the contract and recover the amount he has paid on the purchase price" (62 NY Jur, Vendor and Purchaser, § 136, at 404; *see also, Gentile v Kim, supra; Shulman v Lin,* 99 AD2d 856, *lv dismissed* 63 NY2d 603). We do not consider the plaintiff LIC to have ever been in breach of contract, so that, despite its failure to prove its ability to perform, and in light of the appellant's unjustified refusal to perform, we conclude that it is entitled to a recovery of the money it paid on account of this contract.

The judgment of specific performance is therefore reversed,

and the matter is remitted for the entry of a judgment, with appropriate interest, costs and disbursements. Mangano, J. P., Bracken, Lawrence and Spatt, JJ., concur.